**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**KEOKI WILSON,**

        **Plaintiff,**

                                                  Case No.        05-72722

**v.**

                                                  **HONORABLE DENISE PAGE HOOD**

**AZ AUTOMOTIVE CORP.,**

        **Defendant.**

_____/

**OPINION AND ORDER**

**I.    INTRODUCTION**

      This matter is before the Court on Defendant's Motion for Summary Judgment, filed June 15, 2006. Defendant filed a Supplemental Brief on July 6, 2006. Plaintiff filed a Response on July 24, 2006. Plaintiff filed a Reply and an Affidavit on July 26, 2006. On August 8, 2006, Defendant filed a Post Hearing Brief in Support of Summary Judgment and on August 16, 2006, Plaintiff filed Objections.

**II.    STATEMENT OF FACTS**

      Plaintiff was an employee of Defendant beginning in January of 2002. In 2004, Plaintiff was promoted to inspector and held this job through the conclusion of her employment. Her duties as inspector included inspecting axles "at the end of the line" and making "sure everything was correct before it got shipped out". (Def. AZ Automotive Corp.'s Mot. for Summ. J. at 5, Ex. 1, p. 47). Plaintiff worked an eight hour shift and once or twice a week she was asked to work overtime, with no advanced notice. (*Id.*, Ex. 1, p. 46-47, 53-54). Defendant maintains that working overtime is an

essential function of the inspector position and "AZ Automotive cannot limit the Inspector job to 40 hours or less." (*Id.* Ex. 2, ¶ 4). Plaintiff states that she did not have to do any lifting or pushing of the parts she was inspecting, however, she stood for her entire shift and was also required to kneel and to squat to a semi, as opposed to full, position. (*Id.*, Ex. 1, p. 51-53).

Plaintiff's last day of work was October 14, 2004 when she went on disability leave resulting from complications with her pregnancy. (Compl. ¶ 3). Following an October 14, 2004 doctor's visit, Plaintiff presented James Taylor, Human Resources Manager, with a note from Dr. Burton Brodsky stating, "seen in office & needs bed rest until seen." (Def.'S Mot. for Summ. J. at 6-7, Ex. 4). Defendant contends that at that time, consistent with standard practice, Mr. Taylor gave Plaintiff Family Medical Leave Act ("FMLA") forms, including a Certification of Health Care Provider form and AZ Automotive's FMLA policy, and requested that she fill them out. (*Id.* at 7, Ex. 2, ¶ 7). Plaintiff contends that Mr. Taylor did not give her any FMLA forms at this time, but only gave her Hartford Disability Life Insurance Company Application for Short Term Disability Income Benefits ("Hartford"). (Answer to Def.'s Mot. for Summ. J. at 6, Ex. 1, p. 81).[1] Mr. Taylor asserts that he also explained to Plaintiff that disability leave and FMLA leave run concurrently. (Def.'s Mot. for Summ. J. at 7, Ex. 2, ¶ 7).

On October 18, 2004, Dr. Brodsky completed the Hartford paperwork, stating that her current physical limitations and restrictions include "severe limitation of functional capacity; incapable of minimal (sedentary) activity". (*Id.* at 7, Ex. 5, p. 7). The proscribed treatment for Plaintiff's pregnancy-related complications was bed rest and fluids. (*Id.*)

---

[1] All exhibit references throughout are to the exhibits attached to Defendant's Motion for Summary Judgment, as Defendant's Exhibits are what the parties reference in their responsive briefs.

Plaintiff claims that on November 14, 2004, she informed Mr. Taylor that she was cleared to return to work, with restrictions, which Plaintiff alleges Defendant could have accommodated. (Compl. ¶ 3). Plaintiff claims that she gave Mr. Taylor a note from Dr. Brodsky stating, as best as she can recollect, that she could work light duty with restrictions, no more than 40 hours.[2] (Def. AZ Automotive Corp.'s Mot. for Summ. J. at 7, Ex. 2, ¶ 7). Defendant contends that Mr. Taylor told Plaintiff that due to the overtime requirements of her position, AZ Automotive did not have any light duty work which satisfied her restrictions. (*Id.*). Plaintiff avers that Defendant instead told Plaintiff to go on family medical leave, which she did. Plaintiff asserts that this was the first time she received the FMLA paperwork, including AZ Automotive's Family and Medical Leave of Absence policy.

On or about November 15, 2004, Plaintiff provided Mr. Taylor with a Certification of Health Care Provider form, for her FMLA leave. (*Id.* at 8-9, Ex. 7). The form, completed by Dr. Brodsky states that Plaintiff's estimated due date is January 16, 2005 and the estimated duration of Plaintiff's condition is February 27, 2005, which is six weeks after her estimated due date. In response to a question on the form stating, "[w]ill it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition [*sic*]?", Dr. Brodsky noted, "possibly. Pt [patient] may work only light duty; 8 hour shifts; no more than 40 hours/wk." As to the probable duration of this intermittent work, Dr. Brodsky stated, "6-weeks after delivery, approx. 2/27/05". (*Id.*)

A letter to Plaintiff from Mr. Taylor, dated January 7, 2005, states,

---

[2] Plaintiff was unable to produce a copy of the note, a copy of the note was not produced as part of Dr. Brodsky's file and Mr. Taylor has no recollection of receiving any doctor's notes from Plaintiff in November of 2004. (*Id.* at 8, Ex. 2, ¶ 11).

> On Thursday, October 14, 2005 you requested and were granted an FMLA leave. . . As of Thursday, January 6, 2005 you exhausted your 12 weeks of unpaid FMLA leave.
>
> As such, effective this date, Friday, January 7, 2005, you have overstayed your leave of absence and in accordance with rule #25 of the Sterling Heights Standards of Conduct you are considered to have voluntarily quit your employment with AZ Automotive Corp.

(Ex. 10). On January 14, 2005, Plaintiff gave birth by C-section. Plaintiff admits that following the C-section, she was told that she would be out of work for six weeks. (Def. AZ Automotive Corp.'s Mot. for Summ. J. at 11, Ex. 1, p. 133). On or about January 17, 2005, Plaintiff called Mr. Taylor to notify him that she delivered the baby and that she "probably needed a little more time off of work." (*Id.*, Ex. 1, p. 120). Mr. Taylor advised Plaintiff that her leave time expired, that her job was terminated and that she could reapply, but would be applying as a new applicant. (*Id.*, Ex. 1, 120-21, Ex. 2, ¶ 13). Plaintiff asserts that she asked Mr. Taylor how her leave could be over if she did not go on family medical leave until November 18th, and although she acknowledges that she went on leave in October, she thought the leave between October 14th and November 18th fell under the disability act "with different paperwork corresponding to each." (Ex. 1, p. 120).

In February of 2005, the union grieved Plaintiff's discharge. (Def. AZ Automotive Corp.'s Mot. for Summ. J. at 11, Ex. 11). Defendant denied the grievance and it was withdrawn by the union. (*Id.*; Ex. 2, ¶ 14).

**III.    STANDARD OF REVIEW**

Pursuant to Rule 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel*

*Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be evident from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

## IV.     APPLICABLE LAW & ANALYSIS

### A.     Family Medical Leave Act: Discrimination and/or Retaliation

The FMLA permits eligible employees to take up to twelve weeks of unpaid leave during any twelve month period for the purpose of taking care of oneself or of another family member for medical reasons. 29 U.S.C. § 2612. When the employee returns from the leave, the employer must restore the employee "to the position of employment held by the employee when the leave commenced" or to an equivalent position. Id.; 29 U.S.C. § 2614(a)(1)(A)(B). The employer is not required to provide the employee "any right, benefit, or position of employment other than the right, benefit, or position which the employee would have been entitled had the employee never taken leave. Id.; 29 U.S.C. § 2615(a)(3)(B). The FMLA states in pertinent part:

> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this chapter. It shall be unlawful for any employer to discharge, or in any other manner discriminate against any individual for opposing any practice made unlawful by this sub-chapter.

*Id.*; 29 U.S.C. § 2615(a)(1)(2)(b).

There are two distinct theories for recovery under the FMLA. The "entitlement" or "interference" theory derives from Section 2615(a)(1). The "retaliation" or "discrimination" theory is derived from Section 2615(a)(2). The "entitlement" or "interference" theory comes from the

FMLA's creation of substantive rights. If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred. *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999).

This Court has held that an employer does not violate the FMLA by discharging an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave. *Edgar v. Jac Products, Inc.*, 443 F.3d 501, 506-07 (2006) (citing *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 784-85 (6th Cir. 1998); 29 C.F.R. 825.214(b) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA.").

### 1.     Discrimination: Entitlement/Interference Claim

To assert a *prima facie* case for interference on an FMLA claim, a plaintiff must establish that (1) she is an eligible employee; (2) the defendant is an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled. *Cavin v. Honda of America Manufacturing Inc.*, 346 F.3d 713 (6th Cir. 2003).

Plaintiff asserts that she has presented a *prima facie* case of entitlement/interference, pursuant to the FMLA, in showing that Defendant failed to provide Plaintiff a copy of the Employer's Response to the FMLA Request and/or properly notify her as to when the twelve week leave period commenced. Answer to Def.'s Mot. for Summ. J. at 17; 29 C.F.R. 825.208(c). Plaintiff contends that the first page of the Hartford forms were filled out by Mr. Taylor and, although Mr. Taylor wrote on page one that her Leave of Absence under the Family Leave Act begins on October

14, 2004, Mr. Taylor never showed Plaintiff this portion of the application and she never saw it until the day of her deposition. (Answer to Def.'s Mot. for Summ. J. at 7).

Defendant argues, and Plaintiff disputes, that Plaintiff had notice that her disability and FMLA leave run concurrently. Although the date Plaintiff received the AZ Automotive's Family and Medical Leave of Absence policy is disputed, the policy states, "existing disability leave provided for the birth of a child would be considered FMLA Leave for a serious health condition and credited against the 12 weeks of leave permitted under FMLA." (Ex. 6, p.1). Defendant argues that even if Plaintiff did not receive the FMLA paperwork until November of 2004, because of this provision, she had notice that her FMLA leave commenced on October 14, 2004. Defendant accordingly contends that because Plaintiff did not and could not return to work within the 12 week period, she is not entitled to FMLA protection.

Plaintiff's reliance on 29 C.F.R. § 825.208 cannot be supported because, as pointed out by Defendant, 29 C.F.R. § 825.208 is invalid. (Def.'s Post Hearing Br. In Supp. of Summ. J. at 2). The Supreme Court held the regulation invalid "because it alters the FMLA's cause of action in a fundamental way: It relieves employees of the burden of proving any real impairment of their rights and resulting prejudice . . . The purpose of the cause of action is to permit a court to inquire into matters such as whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002). A plaintiff must therefore show that she was "somehow prejudiced by Defendant's failure to designate her disability leave as FMLA leave, then Defendant could be liable for not giving her proper notice." *Donahoo v. Master Data Center*, 282 F.Supp.2d 540, 555 (2003). In *Donahoo*, this Court held that since the undisputed evidence establishes that Plaintiff was physically unable to return to work after


twelve weeks, Plaintiff cannot demonstrate prejudice because even if Defendant had properly notified her when her FMLA leave began, she would have been unable to resume work. *Id.* at 555-56. The Court will now proceed to analyze whether Plaintiff has submitted sufficient evidence to demonstrate that she was able to return to work at the end of the FMLA period.

The parties dispute the commencement of Plaintiff's FMLA leave. Defendant asserts that Plaintiff's leave began on October 14, 2004 and Plaintiff contends that it began on November 18, 2004. Defendant asserts that because her FMLA leave began on October 14, 2004, it expired on January 6, 2005 and Plaintiff was required to return to work on January 7, 2005. (Def. AZ Automotive Corp.'s Mot. for Summ. J. at 18). Defendant argues that, not only did Plaintiff fail to return to work on this date, she admitted she could not perform the essential functions of her job as of January 7, 2005. (*Id.*, Ex. 1, p. 87, 108). Defendant points to the following deposition testimony of Plaintiff,

> Q. So in November and December – you gave birth January 14, right? November, December and first two weeks of January you were sedentary –
> **A. Yes.**
> Q. – and off your feet?
> **A. Yes**
> Q. Could you have stood on your feet for eight hours a day during that period?
> **A. In December?**
> Q. Yes.
> **A. No.**
> Q. How about in November?
> **A. Probably not.**
> Q. How about the first weeks of January?
> **A. No.**
> Q. Okay. So you couldn't have done your job during those periods.
> **A. No.**
> Q. That's correct?
> **A. Yes.**
>
> \*             \*             \*

>   Q. If you had to sit, you could not perform the essential functions of the inspector's job, right?
>   **A. Correct.**
>   Q. Standing and walking was an essential function of the inspector's job, right?
>   **A. Yes.**
>   Q. And you couldn't do that even in November, December and January, right?
>   **A. Correct.**
>   Q. And you never got any further explanation from Dr. Brodsky about this, right?
>   **A. No.**

(*Id.*, Ex. 1, p. 87, 108).

Defendant further argues that, even if Plaintiff's leave commenced on November 18, 2004, she nonetheless would not have been able to return to work on February 4, 2005, the date of the expiration of her leave. Defendant asserts that Plaintiff admitted that she would be unable to return to work at this time. Plaintiff's deposition testimony states,

>   Q. Well the doctor's certification which is Exhibit 13 is dated November 15.
>   **A. Yes.**
>   Q. That's when you thought the leave started?
>   **A. Yes.**
>   Q. And you were not able to return to work until the end of February, right?
>   **A. Yes.**
>   Q. Was it February 27 or 28?
>   **A. February 27.**
>   Q. And I'll show you a calendar, but you would agree that if your leave started on November 15 and lasted until February 27, 2005, that would still exceed 12 weeks, right?
>   **A. Yes.**

(Ex. 1, p. 118). Later in the deposition, Plaintiff testifies as follows,

>   Q. Now let me ask you this. If the 12 weeks would have expired in early February or even at the end of January, could you have gone back to work and done full duties?
>   **A. Yes.**

(Ex. 1, p. 131). Defendant asserts that this testimony contradicts her earlier testimony that she could not return to work until February 27th. On July 26, 2006, Plaintiff also filed an affidavit reinforcing

9

her contention that if she had known her FMLA leave expired in early February, she could have gone back to work at the end of January and worked full duty plus overtime. (Affidavit of Keoki Wilson, July 26, 2006). Pointing to her own deposition testimony, Plaintiff asserts that Dr. Brodsky cleared her to resume full duty by the end of January and, at this time, she was engaging in all of her pre-disability activities. (Answer to Def.'s Mot. for Summ. J. at 10, pp. 131, 133-34).

Defendant cites *Marathon Ashland Petroleum, L.L.C. v. Int'l B'hd of Teamsters*, in support of its argument that the Court should not consider Plaintiff's "revised" testimony since the testimony was altered only after a break and conference with her attorney. 300 F.3d 945, 951 (8th Cir. 2002). Defendant further asserts that Plaintiff's affidavit likewise cannot create an issue of material fact. In *Marathon Ashland Petroleum*, the court refused to consider a witness' revised testimony, finding that the "testimony after the break was not a mere clarification of his earlier testimony, but was a 'sudden and unexplained revision to create an issue where none existed before.'" 300 F.3d at 951 (quoting *Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 111 (8th Cir. 1997); see also *Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997) (holding that a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts her earlier deposition testimony).

In response, Plaintiff explains,

> [a]s Defendant asserts, Plaintiff did give some testimony that she was pretty much confined to bed rest from the disability time in October through the delivery of her child. She was obviously mistaken, realized this, and then testified that she could have returned to work at the end of January 2005, going back to full duty.

(Answer to Def.'s Mot. for Summ. J. At 7).

Regarding her ability to return to work, Plaintiff further argues that Dr. Brodsky's February 27, 2005 date was merely an estimate. (*Id.* at 11; Ex. 13, p. 15-16). She points to Dr. Brodsky's

10

deposition testimony, wherein he states that he would not give a minimum time frame for a woman to resume normal duties after a C-section, "[i]ve had people go back to work at a week, two weeks, depending on their work. Again, that would be their own doing." (*Id.* at 11, ex. 13, pp. 16-17). Dr. Brodsky was asked, "[s]o she gives birth on 1/14/05. You would not want her to return to work any earlier than 2/27/05?" and he responded, "[n]ot normally, no, but that wouldn't be an absolute. If the patient came and explained the situation she had or needed to work for some reason or she felt great, we'd want to see her beforehand. I probably wouldn't have an issue with that, assuming she was back to normal function, no." (Ex. 13, pp. 25-26).

Defendant points to deposition testimony of Dr. Brodsky in arguing that Plaintiff was not cleared to return to work at the end of January 2005:

> Q. So you don't have any recollection of telling Ms. Wilson she could resume full duties as of 1/26/05?
> A. **I'm basing it on the note [Ex. 12] and what I see. I'm not trying to base it on a recollection from a year and a half ago to tell you what I remember. I'm basing it on a note. I don'[t]' see anything in the note that states - - I don't see anything in the note that says she can't work, and at the same time, I don'[t]' see a note that states she's going back to work.**

(Ex. 13, pp. 29-34, *see* pp. 33-37).

Defendant further argues that even if the Court considers Plaintiff's self-contradicting testimony regarding her ability to return to work, the fact that she was never actually released to return to work is insufficient to create a genuine issue of material fact. In *Edgar v. JAC Products, Inc.*, the plaintiff testified at her deposition that she would have been able to timely return to work, however acknowledged that she was "unaware of what her doctors would have wrote down there to that respect." 433 F.3d 501, 510 (6th Cir. 2006). The plaintiff in *Edgar* further relied on an ambiguous answer of Dr. Day, one of plaintiff's doctors, stating that she had no reason to doubt that

11

plaintiff "'was prepared or preparing to return to work' when JAC terminated her." *Id.* The court found that, even in light of Dr. Day's statement, Dr. Day did not state that plaintiff could have returned to work and thus plaintiff's testimony was insufficient to establish that any mental health professional released plaintiff to return to work during the leave period and fails to contradict the testimony of her doctors that she continued to be unable to return to work. *Id.* The court reasoned,

> [t]hese statements demonstrate nothing more than Edgar's belief that she was capable of returning to work and would have been willing to do so had her doctors released her for duty. Even if the dispute as to the accuracy of these statements were resolved in her favor, Edgar still failed to produce competent evidence to rebut the uncontroverted testimony of her doctors. . . JAC therefore had the right to terminate her pursuant to *Cehrs* and the DOL regulation, and the district court did not err in granting summary judgment in favor of JAC on this basis.

*Id.* at 514.

The facts in the instant case are similar. Here, Plaintiff testified that she was able to return to work and points to ambiguous testimony of Dr. Brodsky to argue that he released her, or would have released her, to return to work. The generalized testimony of Dr. Brodsky regarding his general practice in releasing patients following the delivery of a child is only minimally probative of whether Plaintiff was released to or able to return to work at the end of her FMLA leave period.[3] Regardless of the date she began FMLA leave, the fact remains that Plaintiff cannot demonstrate that she was released to return to work or that she was capable of resuming her duties within the FMLA-

---

[3]

> Q. . . . you would not have authorized Ms. Wilson to return to work on 1/26/05; is that right?
> **A. I wouldn't say we authorize people to go back earlier. People are going to do what people want to do in that sense. Was it my standard of care to have people go back at that point when she would be 12 days out from a C-section? Probably not, if that answers the question.**

(Ex. 13, pp. 29-34).

leave period. *See Edgar*, 433 F.3d at 512. One difference between *Edgar* and the present case is that here Plaintiff contends that Dr. Brodsky did in fact release her to return to work at the end of January, instead of only relying on her subjective assertions as in *Edgar*. However, this assertion is entitled to little weight, as Plaintiff has failed to produce any evidence that Dr. Brodsky, or any other doctor, did in fact release her to return to work prior to February 27, 2005. The only evidence Plaintiff has presented of her ability to return to work are her subjective and contradictory assertions, which are not sufficient to create a question of fact. Defendant's Motion for Summary Judgment on Plaintiff's claim of discrimination under the FMLA is GRANTED.

### 2. Retaliatory Discharge

The burden shifting approach developed for Title VII cases in *McDonnell Douglas* is also applicable to Michigan's Elliott-Larsen Act. *Allen v. Comprehensive Health*, 222 Mich. App. 426, 429, 564 N.W.2d 914 (1997). To establish a *prima facie* case of retaliatory discharge in violation of the FMLA, a plaintiff must show that (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) a causal connection between plaintiff's exercise of a right under the FMLA and the adverse employment action. *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 314 (6th Cir. 2001); *Canita v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). "What makes the employment decision unlawful under the latter theory [retaliation] is the motive of the employer-namely, that the action was taken because the employee exercised, or complained about the denial of, FMLA-protected rights." *Edgar*, 443 F.3d at 512.

Once a plaintiff establishes a *prima facie* case, the burden of persuasion shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision.

*McDonnell Douglas*, 411 U.S. at 802. Even though the burden of going forward is on the defendant once a plaintiff has established a *prima facie* case, the ultimate burden of persuasion never shifts from the plaintiff. *Id*. Once the employer carries this burden, the burden then shifts back to plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id*.; *Ang v. Proctor & Gamble Co.*, 932 F. 2d 540, 548 (6th Cir. 1991). The plaintiff may meet this burden by showing: 1) that the stated reasons had no basis in fact; 2) that the stated reasons were not the actual reasons; or 3) that the stated reasons were insufficient to explain the employer's action. *Wheeler v. McKinley Enters.*, 937 F. 2d 1158, 1162 (6th Cir. 1991). The burden of persuasion always remains, however, with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

Defendant argues that Plaintiff has not presented any evidence demonstrating that she was terminated as a result of taking FMLA leave. (Def.'s Mot. for Summ. J. at 23). Defendant asserts that the record suggests the opposite since Defendant granted Plaintiff leave without hassle, no one discouraged her from taking FMLA leave and Mr. Taylor even encouraged her to take FMLA leave. (*Id.*, Ex. 1, pp. 102–3, 120-21). Defendant further argues that it has reinstated at least two other employees following their FMLA leaves. (*Id.*, Ex. 2, ¶¶ 16-17).

Plaintiff points to *Richmond v. Oneok, Inc.*, and asserts that, under the *McDonnell Douglas* approach, pretext may be established by showing "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employers . . . reasons for its action." 120 F.3d 205 (10th Cir. 1997). Plaintiff argues that "based on the actions of Mr. Taylor and the manner in which he dealt with the Plaintiff, factual issues are presented regarding discrimination and retaliation". (Answer to Def.'s Mot. for Summ. J. at 20).

Plaintiff has satisfied the first two elements of a *prima facie* case of retaliatory discharge. There is no question that requesting and taking FMLA leave is a protected activity and that Plaintiff's discharge constitutes an adverse employment action. *Smith v. ACO, Inc.*, 368 F.Supp.2d 721, 734 (E.D. Mich. 2005). "The 'causal link' between the protected activity and the adverse employment action is demonstrated by showing that the employer would not have taken the adverse action 'but for' the employee's protected activity." Id. (quoting *Agee v. Northwest Airlines Inc.*, 151 F.Supp.2d 890, 896 (E.D. Mich 2001); *Allen v. Dep't of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999). While not dispositive, evidence that defendant treated plaintiff different from a similarly situated employee or that the adverse action occurred shortly after the plaintiff engaged in the protected activity is relevant in the causal connection analysis. *Smith*, 386 F.Supp.2d at 734.

Plaintiff has failed to present evidence to create a question of fact as to whether her discharge was causally connected to her protected activity. Plaintiff has not demonstrated that she was treated differently than a similarly situated employee or a close temporal proximity between the protected activity and the adverse action. More importantly, because Plaintiff cannot demonstrate that she was able or released to return to work at the termination of her FMLA leave period, she cannot demonstrate that she would not have been subject to the adverse action, discharge, had she not engaged in the protected activity, applying for and taking FMLA leave. *Allen*, 165 F.3d at 413 ("In order to show a causal connection, a plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action.") Plaintiff has not established a *prima facie* case of retaliatory discharge. Defendant's Motion for Summary Judgment with respect to Plaintiff's claim of retaliatory discharge under the FMLA is GRANTED.

**B.     Discrimination: Michigan Elliott-Larsen Civil Rights Act**

Title VII's prohibition against discrimination based on sex extends to also prohibit discrimination based on pregnancy. Under *McDonnell Douglas*, a plaintiff establishes a *prima facie* case and creates a presumption of discrimination by establishing: (1) she was pregnant; (2) she was qualified for her job; (3) she was subjected to an adverse employment decision; and (4) there is a nexus between her pregnancy and the adverse employment decision. *Prebilich-Holland v. Gaylord Entertainment Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000)). Pregnancy discrimination claims under the Michigan Civil Rights Act may be based on either a "disparate treatment" or a "disparate impact" theory. *Dep't of Civil Rights ex rel Peterson v. Brighton Area Schools*, 171 Mich.App. 428, 437 (1988). A disparate impact claim under *McDonnell Douglas* requires a plaintiff to show she was treated differently from similarly situated employees from a non-protected class. *McDonnell Douglas*, 411 U.S. at 802.

Plaintiff asserts that she has established a *prima facie* case of sex discrimination. Plaintiff avers that she was repeatedly harassed by Defendant's management, who repeatedly refused to accept excuses from Plaintiff's physicians. (Compl. ¶ 11). Plaintiff contends that in October of 2004, she brought Mr. Taylor a note from Dr. Brodsky and informed Mr. Taylor that she was having complications with her pregnancy and needed time off. Plaintiff contends that Mr. Taylor issued her a write up, which resulted in Plaintiff's union filing a grievance on her behalf. (Answer to Def.'s Mot. for Summ. J. at 13, Ex. 1, p. 66-69). Plaintiff also argues that Mr. Taylor never showed her the first page of the Hartford application, which indicates that her leave began on October 14, 2004. Plaintiff asserts that Mr. Taylor is not being truthful in his affidavit wherein he states that he gave her the FMLA paperwork in October of 2004. Plaintiff also reiterates her confusion, as opposed to

16

untruthfulness, regarding the time frame within which she was able to return to work. (*Id.* at 14). Plaintiff contends that Defendant discriminated her based on her sex by wrongfully terminating her employment. (Compl. ¶ 13).

Defendant asserts that Plaintiff is unable to show that she was discriminated because she is female, she cannot show she was treated differently than similarly situated male employees and Defendant has a legitimate, nondiscriminatory reason for terminating Plaintiff. (Def.'s Mot. for Summ. J. at 13-15). Defendant argues that Plaintiff's sex discrimination fails as a matter of law because Plaintiff cannot show any male employees who were treated more favorably. Defendant points to a former male employee, Noman Mosleh, who was terminated for failure to return to work following the expiration of his FMLA leave period. (Def.'s Mot. for Summ. J. at 14, Ex. 2).

Plaintiff has presented no evidence demonstrating that she was treated differently than similarly situated individuals not within her protected class. Plaintiff has not presented evidence to contradict that presented by Defendant demonstrating a similarly situated individual who was treated them same as Plaintiff. Plaintiff has not established a *prima facie* case of discrimination under the Michigan Civil Rights Act. Defendant's Motion for Summary Judgment regarding Plaintiff's discrimination claim is GRANTED.

      **C.**      **Retaliation: Michigan Elliott-Larsen Civil Rights Act**

Plaintiff concedes that she never made a complaint to management that she was being discriminated against on the basis of her pregnancy and withdraws her claim for retaliation under the Elliott-Larsen Civil Rights Act. (Br. in Opp. to Def.'s Mot. For Summ. J. at 17).

Accordingly,

17

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment **[Docket No. 10, filed June 15, 2006]** is GRANTED.

                                                    s/ DENISE PAGE HOOD
                                                    DENISE PAGE HOOD
                                                    United States District Judge

DATED: March 30, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2007, by electronic and/or ordinary mail.

                                                    S/William F. Lewis
                                                    Case Manager